## Keene's Appeal.    Keene's Estate.

1. A person who has a mere possible interest so contingent and uncertain that it never may happen, is not such an one as under the Act of March 29th 1832 (Orphans' Court) may compel an appearance in the Orphans' Court.

2. A bare possibility under a will dependent upon the death of a first taker without issue, is not such an interest as will authorize a citation to the executor to account.

3. The interest for such purpose must be such as will certainly fall into possession some time.

4. An heir cannot in the ancestor's life maintain a bill of discovery of facts or deeds necessary to the title of the estate.

5. A bill to perpetuate testimony will not lie by a remainder-man against a tenant in tail.

February 12th 1869.  Before THOMPSON, C. J., AGNEW and WILLIAMS, JJ.  READ, J., at Nisi Prius.  SHARSWOOD, J., absent.

Appeal from the decree of the Orphans' Court of *Philadelphia*: No. 264, to January Term 1869, in the estate of Sarah L. Keene, deceased.

On the 29th of June 1867, Lawrence St. Clair Keene and Edward J. Keene petitioned the Orphans' Court for a citation to Ellen K. Mitchell, &c., executrix, &c., of Sarah L. Keene,

deceased, requiring her to settle an account of her administration. The answer averred that the petitioners had no interest under the will of the testatrix. After the filing of the answer the following facts were agreed on by the parties as if proven before an examiner :—

Sarah Lukens Keene, lately of the city of Philadelphia, died May 11th 1866, having made her last will and testament, dated November 18th 1843, which was duly proved June 9th 1866, when letters testamentary thereon were duly granted to. Ellen Keene Mitchell, surviving executrix named in said will, a copy whereof was annexed.

Her brother, James Bryden Keene, named in said will, died November 17th 1864, intestate, leaving surviving him his widow, Phœbe, and six children, viz. : Lawrence St. Clair, Robert, James, Sarah, Austin and Ellen Keene, of whom Ellen died unmarried, intestate, September 10th 1867, and the rest are living.

Lenox Keene, named in said will, brother of said executrix, died November 25th 1862, intestate, leaving surviving him his widow, Susan, and now living and married to John L. Hammond, May 1st 1860, and four children, two of whom died in infancy, and the remaining two now living are Jesse L. Keene and Edwin J. Keene.

Ellen Keene, named in said will, was married to Samuel B. W. Mitchell, now living, after the date of the will and before the testatrix's death, and has no children, child or issue ; and Henry Edgar Keene, named in said will, is married, and has no children, child or issue.

The portions of the will of Miss Keene important to this controversy are the following :—

"Nor is the standing or any of the furniture of the said three-story brick house" (previously devised) "to go with it; but I devise it all and entirely, with my silver plate and my wearing apparel, and my jewelry (except such articles as I shall hereafter name), with all my books and musical instruments, everything in the house, to my beloved niece, Ellen Keene. I also bequeath to this dear niece (the only surviving daughter of my brother, Jesse Lukens Keene, deceased), whom I have educated, the sum of $30,000, to be invested in ground-rents, or bonds and mortgages on real estate, the interest to be paid to her only, or her power of attorney, whether married or single, during her life, and after her death to her children, if any, absolutely ; but if she dies without issue, the principal to go to her brothers, Henry and James, namely, the aforesaid investment of $30,000 in ground-rents and bonds and mortgage, the interest only for their uses; but to their children, lawful issue, absolutely. But if she marries without my consent, or after my death, to any person whom I did not approve during my life, then this devise shall be null and void, and she

shall only receive $10,000, subject to the same investment of ground-rents or bond and mortgage, the interest only to be paid to her alone, or her power of attorney, and after her death to her children absolutely. I have made this clause, not from any fear of its *probable* necessity, but from prudence and precaution. If she dies without lawful issue, this sum to go to her brothers in the same manner as specified above in the larger sum. I desire also that for two years after my demise, my dear niece, Ellen Keene, shall inhabit the house now mine, at the north-west corner of Tenth and Chestnut streets; the bequest of it not to take place until that period; and it is my earnest solicitation that my dear friend, Sarah Pogson Smith, shall, during that period, inhabit it with her; and if afterwards my dear Ellen Keene does not marry, that she and Mrs. Pogson Smith may live together, the latter transferring to my beloved niece the friendship and interest she has always shown to me, becoming also a *maternal* guardian of *her* welfare and happiness, her virtues and her religious principles; and may God bless my prayers and my endeavors for the happiness in this world, and in the world to come, of her who has been for these ten years past the object of my affections and of my most anxious solicitude and tender regard. And I do hope this arrangement will be acceptable to both my dear niece and my dear friend, Sarah Pogson Smith.

"I give and bequeath to my nephew, Henry Edgar Keene, $10,000, to be invested in ground-rents, or bonds and mortgages on real estate, the interest only to be paid to him during his natural life; if he marries and has children, to his lawful issue absolutely; but if he dies unmarried, this sum to be divided between his two, or one surviving brother and his sister, subject to the same investment, and receiving the interest only of the same, during their lifetime.     *     *     *     *     *     *     *

"It is my will that my executors shall have power to sell the large lot situated on Chestnut street, bounded by the aforesaid three-story brick house on the Chestnut street front, and on the east by Tenth street, and the small lot on which the brick house stands, back or north by an alley, and to the west by the house of Mrs. Norris; or any part of my real estate not already devised, to pay my legacies; but not until two years have elapsed from the time of my death, unless the property shall have attained its full and just value, and the stocks in which much of my personal estate is vested, have attained also *par value.*

"My debts will be very few.

"The residue of my estate, real and personal, I give and bequeath to my dear and affectionate niece, Ellen Keene, subject to the same conditions as my legacy of $30,000, specified in a former part of this instrument, the principal to be invested in ground-rents or in the bank stock considered safe, but preferable in bond

[Keene's Appeal.]

and mortgage on real estate, the interest to be enjoyed by her during her life, the principal to devolve to her children, lawful issue, absolutely; if she dies unmarried, she has power to devise it to whichever of her brothers she *will* consider most worthy to inherit her bequest and mine, the interest only to them, to their children, lawful issue, absolutely."

*G. L. Crawford* (with whom was *B. H. Brewster*, Attorney-General), for appellant.—The provisions taken together show that the word "issue" is used for children: 2 Jarman on Wills 368, 398; De Haas *v.* Bunn, 2 Barr 335; Haldeman *v.* Haldeman, 4 Wright 29; Sheets's Appeal, 2 P. F. Smith 268. The subject being personalty, the limitation is to be construed to be upon a failure of issue at the death of the first taker who gets but a life estate: 2 Redfield on Wills 372, §§ 20, 21, 22, and notes; Hawkins on Wills 197; Emma Myers's Appeal, 13 Wright 111. "Children, lawful issue" means children: Walker *v.* Milligan, 9 Wright 180; 2 Jarman on Wills *353, *355; Ryan *v.* Cowley, Lloyd & Goold 10; Carter *v.* Bentall, 2 Beav. 551. The petitioner and his brothers and sisters have a right to have security from the life tenants: Act of February 24th 1834, § 49, Pamph. L. 82, Purd. 303, pl. 184; Duval's Appeal, 2 Wright 120, 121; Bedford's Appeal, 4 Id. 18.

*E. K. Price*, for appellee.—A citation will not issue to one who shows no right: Act of March 29th 1832, § 57, Pamph. L. 208, Purd. 766, pl. 17, 18; Halsey *v.* Tate, 2 P. F. Smith 311; Okesson's Appeal, 2 Grant 303. The fund to pay the legacies is real estate still unsold. It is unconverted real estate: Chew *v.* Nicklin, 9 Wright 84; Annewalt's Appeal, 6 Id. 414.

If the limitation over of the $30,000 bequest on Ellen's death is in the event of her dying "without children living at her death to Henry and James for life, with executory bequest to their children," then if Ellen were to leave grandchildren and leave no child living at her death, the grandchildren would take nothing. Such a construction is not adopted in the absence of express words: Doe *v.* Perryn, 3 Term R. 484; Weakley *v.* Rugg, 7 Id. 322; Doe *v.* Considine, 6 Wall. S. C. 458; Rewalt *v.* Ulrich, 11 Harris 390.

It means if having had any; for such would as soon as born take a vested remainder absolutely: Lantz *v.* Trusler, 1 Wright 482. It is not like McBride *v.* Smith, 4 P. F. Smith 245.

They would take as purchasers: Guthrie's Appeal, 1 Wright 9; Bacon's Estate, 7 P. F. Smith 504; Train *v.* Fisher, 15 S. & R. 149. The alternative limitation would not be considered too remote: Lewis on Perpet. 373; Sm. Ex. Int's., § 541; Hawkins 212, 213.

[Keene's Appeal.]

The limitation to Henry and James is joint. It is to them *nominatim*: Hawkins on Wills 90, 111; 2 Jarm. 157, 167, 111; 2 Powell on Devises 368; Buffar *v.* Bradford, 2 Atk. 220; Morley *v.* Bird, 2 Ves. 628; Campbell *v.* Campbell, 4 Bro. C. C. 15; McKeehan *v.* Wilson, 3 P. F. Smith 74; Wilson *v.* McKeehan, Id. 79, 80. The right of the survivor to take the whole is unquestionable, irrespective of our Act of Assembly: Baldwyn *v.* Johnson, 3 Bro. C. C. 455; Frewen *v.* Relef, 2 Id. 221; Putnam *v.* Putnam, 4 Bradford N. Y. Rep. 208; 1 Rop. on Leg. 485.

This bequest to the two legatees is unaffected by the Act of 31st March 1812, § 1, 5 Smith L. 395, Purd. 569, pl. 1, which only takes away the right of survivorship as to those who "hold" or are "possessed" of an estate or thing in joint tenancy: Newbold *v.* Pritchett, 2 Whart. 46.

"The interest only to their uses" is not expressed to be *for life*, but without limit of duration. Now, the interest of a bequest given without limit as to time, is equivalent to a gift of the principal: Phillips *v.* Chamberlaine, 4 Vesey 51; Adamson *v.* Armitage, 19 Id. 416; Barford *v.* Street, 16 Id. 135; Hawkins *v.* Hawkins, 7 Simons 173, 197; Elton *v.* Sheppard, 1 Bro. C. C. 533; Humphrey *v.* Humphrey, 6 Eng. L. & Eq. 113; Hawkins on Wills 123; Haig *v.* Swiney, 1 Sim. & Stu. 487; Clough *v.* Wynne, 2 Madd. 439; Stretch *v.* Watkins, Id. 143; Hawkins 124, 126; Earl *v.* Grim, 1 Johns. Ch. Rep. 494; Garret *v.* Rex, 6 Watts 14; Heilman *v.* Heilman, 4 Rawle 440; Campbell *v.* Gilbert, 6 Whart. 72; Silknitter's Appeal, 9 Wright 365; Van Rensselaer *v.* Dunkin's Executors, 12 Harris 252.

The contingent limitation to Henry and James and to their children was to the latter as persons who would take in course of succession from them what their parents had first enjoyed. If the former would take the whole interest, it could only be so that their children could take; and as James predeceased the testatrix, he could transmit nothing to his children: Womrath *v.* McCormick, 1 P. F. Smith 504. The Act of May 6th 1844, § 2, Pamph. L. 565, Purd. 1017, pl. 15 (*supra*), does not save this bequest to such children, as the will of the testatrix was made November 18th 1843, she dying May 11th 1866. The act is exclusively prospective: Mullock *v.* Souder, 5 W. & S. 198; Martindale *v.* Warner, 3 Harris 471, 479; Kurtz *v.* Saylor, 8 Id. 205; Neff's Appeal, 9 Id. 243; Fisher *v.* Farley, 11 Id. 501; Becker's Appeal, 3 Casey 52; Dewart *v.* Purdy, 5 Id. 114; Gable *v.* Daub, 4 Wright 217; Taylor *v.* Mitchell, 7 P. F. Smith 209.

In the $10,000 legacy "unmarried" is, never having been married; consequently the limitation over of the interest of the gift cannot possibly take effect: Maugham *v.* Vincent, 18 L. J. Rep. N. S. Ch. 329; Hall *v.* Robertson, 21 Eng. L. & Eq. Rep.

504; Bell *v.* Phyn, 7 Vesey 458; Maberly *v.* Strode, 3 Id. 450; Shreiner's Appeal, 3 P. F. Smith 106.

The limitation over of the interest only is for the want of marriage of the legatee; and as that event has taken place, such limitation is inoperative: Holmes *v.* Holmes, 5 Binn. 252; Griffith *v.* Woodward, 1 Yeates 316; Jessup *v.* Smuck, 4 Harris 327; Vaughan *v.* Dickes, 8 Id. 514; Matlack *v.* Roberts, 4 P. F. Smith 148.

The words dying "*unmarried* and without issue" make "unmarried" to have a meaning other than as a mere step towards having issue, since as the event of marriage or not is necessarily ascertained within the life of the first taker, it prevents the limitation being one after an indefinite failure of issue, and, therefore, prevents its being too remote: Eichelberger *v.* Barnitz, 9 Watts 450; Scott *v.* Price, 2 S. & R. 63, 64.

Should Henry's wife survive him, in which case clearly he will not "die unmarried," and the limitation over cannot take effect, it will remain with Henry that he may provide for his widow: Everett *v.* Cooke, 7 East 269; Framlingham *v.* Brand, 3 Atk. 390; Baldwin *v.* Rawling, 2 B. & Ald. 448; Hawkins on Wills 210; Re Rye's Settlement, 10 Hare 111.

As to the residuary clause, the rule is, that the first taker in a will is presumed in law to be the favorite of the testator: McFarland's Appeal, 1 Wright 300; Rewalt *v.* Ulrich, 11 Harris 388; Wilson *et al. v.* McKeehan, 3 P. F. Smith 79. The word *devolve* denotes legal succession: Haldeman *v.* Haldeman, 4 Wright 35; Clark *v.* Baker, 3 S. & R. 477; Train *v.* Fisher, 15 Id. 149; Potts's Appeal, 6 Casey 168. If unmarried, she may give to her brothers as she pleases; but there is no restriction if married: Griffith *v.* Woodward, 1 Jarm. 457; Everett *v.* Cooke, 7 East 269; Framlingham *v.* Brand, 3 Atk. 390.

Every intendment is to be made against holding a man to die intestate, who sits down to dispose of the residue of his property: Smith's Ex. Int's., § 341; Note 3 to Maberly *v.* Strode, 3 Vesey 456; Brown *v.* Higgs, 4 Vesey 716; Hall *v.* Dickinson, 1 Grant 240; Baldwin *v.* Rawling, 2 B. & Ald. 441. The word *estate* is as broad as if she had said to her and to her heirs and assigns: Womrath *v.* McCormick, 1 P. F. Smith 504. "If she dies *unmarried*" means without having any husband living at her decease: Sanders' Trust, Law Reporter, Law Rep. 1 Eq. Cas. 675.

The power in the niece of disposing of the property upon the uncertain event "if she dies unmarried," is not an imperative direction to make an appointment: Hambright's Appeal, 2 Grant 321; Second Reformed Presbyterian Church *v.* Disbrow, 2 P. F. Smith 224; Brook *v.* Brook, 3 Sm. & Giffard's Reps. 280.

If the power to devise the residue be the only means of disposing of the residue, and that be a trust, or duty, it has by

[Keene's Appeal.]

events preceding the death of the testatrix, become fixed in favor of her only living brother, Henry: Graef *v.* De Turk, 8 Wright 527; Horwitz *v.* Norris, 13 Id. 213; Brown *v.* Higgs, 4 Vesey 708; Hawkins on Wills 62.

The opinion of the court was delivered, March 1st 1869, by

AGNEW, J.—It is not necessary we should determine the rather difficult question, what ultimate interest in the estate of Sarah L. Keene the appellant might take under her will. It is sufficient to say, he has no present interest, immediate or remote, that will enable him to maintain his petition for an account and settlement of the estate. His interest is so entirely contingent and uncertain, it may never have an actual existence. It is a bare possibility, dependent on the death of Ellen K. Mitchell without issue, and even after that comes a question of survivorship between Henry and James, to be decided before any part can reach the children of James Keene, now deceased, of whom the petitioner is one. The 1st article of the 57th section of the Act of 29th March 1832 provides that the proceeding to compel appearance, to answer in the Orphans' Court, shall be on the petition of any person *interested*, whether such interest be immediate or *remote*. The legislature, in using the term remote, certainly did not mean a mere possible interest so contingent and uncertain it may never happen. If those who have existing interests, immediate or remote in the time of enjoyment, but which must *certainly* fall into possession at some time, do not call the executor or trustee to account, or if there be none such, it does not seem to be necessary to the due administration of justice, that one having no interest should maintain a suit that may never result in any benefit to himself. Though this point has not been expressly decided, we find analogies that support the conclusion. Thus, an heir at law cannot, during the lifetime of his ancestor, maintain a bill of discovery of facts or deeds necessary to the title of the estate, on the ground that he has no title whatever, but only a future or prospective interest: Snell's Principles of Equity 486. A bill to perpetuate testimony will not lie in favor of a remainder-man against tenant in tail, who can bar the remainder: Id. 491. And in Okeson's Appeal, 2 Grant 303, it was held, that a claimant of a legacy presumed to be paid by lapse of time, was not entitled to cite executors into court to answer his claim. For these reasons, the appeal is dismissed at the cost of the appellant.