## Overbrook Heights Building & Loan Association *v.* Wilson (et al., Appellant).

Argued January 9, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edward L. F. Clarke,* with him *H. J. Makiver,* for appellant.

*E. Leroy van Roden,* with him *David L. German, Jr.,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 22, 1939:

This is an appeal from a judgment on a writ of attachment execution directed against a devise in a will in the hands of the executor and trustee.

The facts are: On October 27, 1937, the Overbrook Heights Building & Loan Association, successor to and merged with the Ernest Building & Loan Association, the plaintiff-appellee (hereinafter referred to as the association), entered a judgment upon a bond and warrant of attorney against Edgar M. Wilson. On the same day, it caused to be issued a writ of attachment execution directed against the devise under the will to the defendant, Edgar M. Wilson, in the hands of Alexander Wilson, Jr., Executor and Trustee under the will of Alexander Wilson, deceased. On November 26, following, interrogatories to the garnishee were filed. On November 29, the defendant by petition requested the court to dissolve the attachment, and, on April 8, 1938, the court refused to do so. The garnishee then filed his answer to the interrogatories averring that the defendant "has no interest" in the Estate of Alexander Wilson, deceased, "other than an interest in the event that the defendant should survive the trustee." Upon the an-

swers, the association asked for a rule for judgment against the garnishee. On July 22, an answer was filed to this rule by the garnishee, incorporating a copy of the will of the decedent and averring that "Edgar M. Wilson, the defendant, is not entitled to anything, nor is there at the present time anything due him, nor will he ever receive anything until a contingency happens, to wit, he outlives or survives his father. (See paragraph eight of the will attached which provides, inter alia, 'Upon the death of any of my said children leaving issuing surviving.')" On the same day the garnishee filed his petition asking that the writ of attachment execution be dissolved because the interest of the defendant in the Estate of Alexander Wilson, deceased, "is purely contingent and is not subject to attachment." To the latter, the execution plaintiff filed an answer, averring that "Edgar M. Wilson has an interest" in the estate aforementioned, which is "a vested interest subject to divestiture in the event of the defendant's death." Such an interest is subject to attachment. Both rules were then argued before the court in banc and by formal opinion the garnishee's rule to dissolve the attachment was dismissed, and the association's rule for judgment was sustained and judgment accordingly entered against the garnishee as follows: "October 21, 1938—Judgment entered in favor of the Plaintiff and against the Garnishee, Alexander Wilson, Jr., Executor and Trustee u/w of Alexander Wilson, dec'd. Eo die: Damages assessed at $10,500.90 [includes $9,917.42 principal and $583.48 interest]." This appeal followed.

The question we have to decide here is whether the defendant's interest under paragraph eight of the decedent's will is a vested or a contingent one. If it is the former, it is the subject of an attachment execution; otherwise, it is not. This court so held in *Patterson v. Caldwell*, 124 Pa. 455, 461, 17 A. 18, where we said: "An attachment execution reaches effects and interests that cannot be taken on a writ of fieri facias, but it is execu-

tion process and its office is to appropriate the property of the defendant to the judgment which supports it. That which has a present and certain existence although its possession and enjoyment may be postponed for a time, may be seized by it, but it cannot grasp expectancies or contingent interests." See also *Butler County Nat. Bk. v. MacMullen et al.,* 292 Pa. 556, 141 A. 484.

Paragraph 8 of the will in question provides as follows: "I give and bequeath to my executors and trustees hereinafter named, all the rest, residue and remainder of my estate, real, personal, and mixed whatsoever and wheresoever, in trust, to collect the rents, interest and income and profits thereof and pay over the same monthly unto my following named nine children, to wit: . . ., Alexander Wilson, . . ., in equal shares for and during all the terms of their natural lives. Such rent, interest, income and profits, in no event to be in any way liable for the debts, liabilities, contracts or engagements of any of my said children, but in all cases to be paid to them, and in case of my daughters to be paid to them individually notwithstanding their coverture. Should any of my said children die unmarried, or without issue, I give, devise and bequeath his or her share of my estate of which he or she had received the income, to such of my said nine children above named as shall then be surviving for and during the term of their natural lives, and to the issue of such of my said children as may then be deceased, such issue of said deceased child or children however to take absolutely the share or portion of my estate which their parent would take for and during the term of his or her natural life under this item of my will had he or she been living. Upon the death of any of my said children leaving issue surviving I give, devise and bequeath unto such issue absolutely that portion or share of my estate which my said deceased child had received the income for life in the proportions in which it would be distributed to such issue under the Intestate Laws of the Commonwealth of Pennsylvania. Should

such issue be minors I constitute and appoint my Executors and Trustees Guardians and Trustees of the Estate of such minors. Such Guardianship or Trusteeship in case of female to continue until she reaches the age of twenty-five years."

Defendant, Edgar M. Wilson, is the child of Alexander Wilson, Jr., one of the children of the testator and the executor and trustee under the will. Upon the death of Alexander Wilson, Jr., if the defendant is then living, he will receive the principal of "the portion or share of the estate" on which his father had received the income for life "in the proportions in which it would be distributed to such issue under the Intestate Laws of the Commonwealth." The garnishee, Alexander Wilson, Jr., who is the father referred to, in paragraph seven of his answer to the plaintiff's rule to show cause why judgment should not be entered against him as garnishee, recognizes that his estate is only that of a "life tenant." The remainder over goes to his issue "upon the death" of this life tenant. The interest of the defendant, the issue in being of the class of which he is a member, may be decreased or enlarged by future issue or by the death of some of the living issue in the same class, but this does not make his estate a contingent one. The interest clearly vested at testator's death. We so held on a similar state of facts in *Lloyd's Estate,* 326 Pa. 230, 192 A. 98. There the clause in question passed all the testator's estate to a trustee in trust to "pay over the net income thereof unto my beloved wife . . ., for and during the term of her natural life, . . . and at and after the decease of said wife, then in trust to be equally divided between my children and the issue of any deceased child as they respectively arrive at the age of twenty-one years, share and share alike, absolutely and in fee, but so, however, that the issue of any such deceased child shall stand in the place of and only take the same share which said decedent would have taken, if living, the income of said respective shares to be paid to said children, or grand-

children, if any, during their respective minorities." Testator's son John died after having attained the age of twenty-one, during the lifetime of testator's widow. He died without issue. Testator's other son William survived. John had assigned his interest in the estate to certain banking institutions as collateral security for loans made to him. After the death of the life tenant, these banking institutions made claim to one-half of the net estate on the ground that John had a vested interest under his father's will. William claimed that as a result of the death of John before the death of his mother, the entire estate vested in him, William. The orphans' court awarded one-half of the fund for distribution to the banking institutions, holding that John's share had vested. Upon appeal, this decree was affirmed. In that case this court, speaking through Mr. Justice SCHAFFER, quoted with approval the following from the opinion of Judge GEST of the Orphans' Court of Philadelphia, in *Buckman's Est.*, 13 D. & C. 653, 655: ". . . What substantial difference is there between a devise after life estate to the testator's children (which is clearly vested) and a direction that the estate should be divided among them." As long ago as *McClure's Appeal*, 72 Pa. 414, it has been pointed out: "Though there be no other gift than in the direction to pay or distribute in futuro, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question."

The basic error in appellant's reasoning is found in the following excerpt from his brief: "It has clearly been shown by the terms of the will that the grandson of the testator, to wit, Edgar M. Wilson, unless he survives his father, the present Trustee and Garnishee, will receive nothing. It is a prior contingency that he must fulfill, to wit, he must outlive the trustee." The contingency which makes a devise "contingent" is never the contingency that the devisee in order to *enjoy* the *devise*

must outlive the life tenant who possesses the prior right of enjoyment. (*McClure's Appeal,* supra.) In the "Restatement of Property," Vol. 2, p. 561, sec. 157, under the caption "Comment on Clause (d)" appears the following: "*Remainder subject to a condition precedent—Uncertainties.* When a limitation creates a remainder and it is not possible to point to any person and to say such person would take, if all interests including a prior right to a present interest should now end, this remainder is subject to a condition precedent. This uncertainty distinguishes this type of remainder from those vested subject to open and from those vested subject to complete defeasance. Sometimes the uncertainty proceeds from the necessity, under the terms of the limitation, for some stated event to occur before a known person could have a certainty of future enjoyment. Sometimes the uncertainty is still more pervasive, in that the fulfillment of the condition precedent must occur before any person will exist who could take the remainder interest." In the same volume of the Restatement, p. 551, sec. 157, under "Comment on Clause (b)," appears the following: "*Remainders vested subject to open—Certainty of enjoyment of some share.* When a remainder is vested subject to open, it is possible to point to a person and to say that such person would take, if all interests including a prior right to enjoyment of the thing should now end. Furthermore, this person is certain to acquire a present interest in some part of the affected thing at some time in the future, and is also certain to be entitled to retain permanently thereafter the present interest so acquired. . . . ." It is clear to us that Edgar M. Wilson, the defendant, is such a person. In deciding questions of this character, the fact that a devisee's *enjoyment* of the interest that has legally vested in him may be frustrated by his death is of no materiality. When it is stated that "this person is certain to acquire a present interest in some part of the affected thing at some time in the fu-

ture," the statement is based on the presumption that he will live until that "future."

The contingency that makes a devise contingent is well illustrated in the case cited by appellant with the following comment by him: "The meaning of the word 'interest' in the attachment act is put beyond doubt by the interpretation of the court in *Keene's Appeal,* 60 Pa. 504." In that case, as Justice AGNEW pointed out, the interest of the appellant in the estate in question was "a bare possibility, dependent on the death of Ellen K. Mitchell without issue, and even after that comes the question of survivorship between Henry and James, to be decided before any part can reach the children of James Keene, of whom the petitioner is one." Justice AGNEW, speaking for this court, declared: "He [the appellant] has no present interest, immediate or remote" in the estate.

In *Wheaton Coal Co. v. Harris et al.,* 288 Pa. 294, 135 A. 637, it appeared that decedent died leaving a will in which he gave his residuary estate in trust for his wife for life and directed that on her death the property should "be divided into as many shares as there shall be grandchildren living at the time of my death." He also provided that his son should take the same share as each of the grandchildren and that should his son predecease testator's wife, then the son's share should lapse and become a part of the residuary estate. The son and his two adult sons became indebted to plaintiff and in order to secure payment of that indebtedness issued a writ of foreign attachment against their interests under the will of the decedent, having first obtained judgment against defendants, and summoned the trustee, appellant, and others, as garnishees. The validity of the attachment was questioned and as this court said: "Whether it is or is not valid depends upon the nature of the interests of the son and grandchildren in the estate of William H. Harris, are they vested or contingent?" The court below held them vested and subject to attachment but withheld execution during the life of the widow. The trustee

appealed. This court, in an opinion by Justice FRAZER, said: "It is a well-settled rule, repeated in numerous cases, that the tests in determining if an interest is vested or contingent, is not the certainty or uncertainty of obtaining actual possession, nor the defeasibility or indefeasibility of the right of possession, inasmuch as estates may be vested in interest though without present right of possession. So long as a present right exists to a future possession the estate is vested, even though actual possession may be defeated by a future event. In *Walker's Est.*, 277 Pa. 444, 448 [121 A. 318], quoting from Fearne on Contingent Remainders, and following earlier decisions of this court, we said: 'Wherever there is a particular estate, the determination of which does not depend on any uncertain event, and a remainder is thereon absolutely limited to a person in esse and ascertained, although the nature and duration of the estate limited in the remainder may be such that it may not endure beyond the particular estate, and may therefore never take effect or vest in possession, it is not a contingent, but a vested remainder.' In *McCauley's Est.*, 257 Pa. 377, 381 [101 A. 827], we stated the rule to be that 'Where a legacy is made payable at a future time, certain to arrive, and not subject to condition precedent, it is vested where there is a person in esse at the time of the testator's death capable of taking when the time arrives, although his interest be liable to be defeated altogether by his own death.'" This court then said: "The gift to the son is absolute after the termination of the life estate in testator's wife, subject only to the provision that in case he should die before the life tenant, his share shall become an additional part of the residue devised to the grandchildren. This was clearly a present vested right to a future possession, and the fact that it was subject to be defeated by his death, before the death of the life tenant, did not make the gift contingent. There was a present capacity to take possession, if the possession should become vacant, and the right of enjoyment vested

immediately, subject only to be divested on the happening of the event indicated." In that case the court below held the interest of the son and grandsons to be vested, sustained the attachment as valid, and directed that judgment "be entered in favor of the plaintiff and against the garnishee . . ., trustee under the will of William H. Harris, but not individually or personally, in the sum of $11,476.90, with costs and interest from December 10, 1925, provided so much shall eventually be found in the hands of the garnishee and due the defendants as their shares or interests under the will of William H. Harris, deceased, upon the death of the widow, or any other event, subject, however, as to the share or interest of George H. Harris to his assignment to the Burlington County Safe Deposit and Trust Company." This court affirmed that judgment.

In *Ellwanger v. Moore,* 206 Pa. 234, 55 A. 966, this court, in a case similar to the one at bar, said: "The effect of an attachment is to transfer to the attaching creditor the rights of the defendant in the decedent's estate: *Lorenz v. King,* 38 Pa. 93. 'The attachment of this legacy,' says LOWRIE, C. J., in *Strong's Executors v. Bass,* 35 Pa. 333, . . . 'only transfers to the plaintiffs the responsibility which before was due to the legatee. . . . It merely substitutes the legatee's creditor instead of the legatee himself.' . . . The attachment execution in this case had accomplished its purpose as declared by the statute when the judgment was entered against the garnishees. The attaching creditor then stood in the shoes of his debtor and was armed with the necessary authority to demand and receive of the executors and trustees whatever interest the debtor might have as a distributee of his father's estate. No fieri facias or other writ of execution was required to invest the plaintiffs with the rights of the debtor in the decedent's estate. Such a writ, therefore, was not necessary to carry into effect the purpose of the attachment and to make it available to the creditor. The position of the appellees would

have force and would be correct if the attachment had been laid against personal property or real estate. Then the fieri facias would be necessary to reach and realize on the debtor's interest in the property. An attachment execution is in substance, if not in form, an execution: *Wray v. Tammany,* 13 Pa. 394. . . . The plaintiffs having by their attachment succeeded to the rights of the defendant against his interest in decedent's estate to the extent of their claim must enforce their judgment against that interest, the amount of which can only be determined by the orphans' court: *Maurer v. Kerper,* 102 Pa. 444. That court has the exclusive jurisdiction to ascertain the amount of the estates of decedents, and to order their distribution among those entitled, creditors as well as legatees and distributees: *Hammett's Appeal,* 83 Pa. 392; *Maurer v. Kerper,* supra; *Yocum v. Commercial Nat. Bank,* 195 Pa. 411 [46 A. 94]. Hence on the final settlement and distribution of the estate of Andrew M. Moore by the orphans' court, the plaintiffs may have determined the interest of Albert H. Moore, the defendant, therein, and enforce their rights to said interest acquired by this attachment proceeding. The order discharging the rule to strike off the writ of fieri facias is reversed and the rule is now made absolute and the writ is set aside. The judgment of the court below against the garnishees is so far modified as to restrain its collection until the interest, if any, of the defendant in the estate of Andrew M. Moore is due and payable; and as thus modified, the judgment is affirmed."

In *Hess's Estate,* 27 Pa. Superior Ct. 498, that court said: "The Act of April 13, 1843, P. L. 233, section 10, which rendered liable to execution attachment legacies and any interest in the estate of any decedent, expressly provides that 'the same rights in all respects which the debtor may have, and no greater in any respect whatever are hereby placed within the power of the attaching creditor;' . . . The Act of April 10, 1849, P. L. 619, section 11, authorized the issuing and service of an exe-

cution attachment at any time after the interest of any person in the estate of a decedent had accrued by reason of the death of such decedent. The effect of this was to make clear the legislative intention that the interest of any person in the estate of a decedent should be subject to attachment before the amount of such interest had been determined, but the extent of the rights acquired by the attaching creditor, and the conditions subject to which those rights are to be exercised, remain subject to the provisions of the Act of 1843 above referred to. The appellant attached the uncertain interest of his debtor in an unadministered estate. The remedy was purely statutory and the rights acquired only such as the statute gave. Had the executors, upon answers to interrogatories, admitted that there were sufficient funds of the debtor in their hands to pay this claim, judgment might have been entered against them in their representative capacity for the amount of the debt: *Gochenaur's Executors v. Hostetter,* 18 Pa. 414; *Lorenz's Administrators v. King,* 38 Pa. 93. Upon that state of facts, however, even had the executors paid the debt, the appellant would still have been liable upon his bond to be called upon to refund, if by the final decree of the orphans' court it was determined that at the time of the service of the attachment the interest of the debtor in the estate was less than the amount which had been recovered. His ultimate rights under his attachment were, as against all who were not parties to and were not heard in that proceeding, subject to the final adjudication of the orphans' court. Where the amount of the legacy or distributive share can only be determined by a settlement of the estate, the court of common pleas will not determine what goods or effects are in the hands of the executors or administrators, although it may determine how much money is due to the plaintiff from the heir or legatee, and the amount which has been paid by the executor or administrator to the legatee on account of his distributive share." In *Sinnickson v. Painter,* 32 Pa.

384, this court said that "it is in the power of the court to mould the judgment against the executor or administrator into such form that no injustice will be done to any one." That case referred to a foreign attachment, but in *Lorenz's Administrators v. King,* 38 Pa. 93, we also said: "The same rule is applicable to attachment executions under the Acts of April 13, 1843, and April 10, 1849."

In *Butler Co. Nat. Bk. v. MacMullen,* 292 Pa. 556, 141 A. 484, which was a case involving attachment executions against executors and trustees, we held that a verdict against the executors as garnishees for a certain sum, the same being "the total amount of the judgment and accrued interest" was erroneous, and we remoulded the verdict to conform to "the amount of money in the hands of the garnishee." In *Bouslough v. Bouslough,* 68 Pa. 495, this court said: "The legacy share or interest in the estate being now subject to attachment as soon as it accrues, and before it has been ascertained by any decree in the Orphans' Court, it is impossible for the jury to comply with the provision in the 58th section of the Act of 13th June 1836, by finding what goods or effects were in the hands of the garnishees at the time of the execution of the attachment and the value thereof. There are the demands of the creditors of the decedent himself, which must be ascertained and be satisfied before anything can remain for the legatees or next of kin. Then there are the questions of debt and advancement between the estate and the distributee or legatee, which must be settled before the share or legacy can be ascertained. The attachment transfers to the attaching creditor only the right of the debtor in the estate, subject to all claims of the garnishee as the representative of the estate in his hands: Sec. 2d, Act 27th July 1842, sec. 10th, Act 13th April 1843; and see *Strong's Exrs. v. Bass,* 11 Casey 333; . . . Thus it is evident that a jury in order to find the sum due or coming to the debtor

from the garnishee as executor or administrator, would be compelled to settle the administration account itself, a thing improper, inconvenient and belonging to the Orphans' Court alone." In *Maurer v. Kerper,* 102 Pa. 444, this court declared that "where the amount of the legacy or distributive share can only be determined by a settlement of the estate, the court of common pleas will not determine what goods or effects are in the hands of the executor or administrator," and held that the judgment should be against the executor, qua executor, for the amount of plaintiff's judgment, to be levied of the interest of the defendant in the estate of the decedent. See also *Seip v. Laubach,* 333 Pa. 225.

We agree with the appellant when he challenges the following statement of the court below: "This is a matter strictly for the Orphans' Court and exclusively in its jurisdiction. . . . That court will have to determine for itself whether the interest of the defendant is a vested interest in which event, if it is, the attachments hold, subject to certain limitations." Appellant adds: "The right of the court to dissolve this attachment goes unquestioned." The corollary of this is that it is within the power of the court to refuse to dissolve the attachment. In *Wheaton Coal Co. v. Harris et al.,* supra, the power of the Court of Common Pleas to decide whether a devisee's interest in an estate was vested or contingent was clearly recognized. As Justice SHARSWOOD, speaking for this court in *Van Dyke's Appeal,* 60 Pa. 481, said: "It is the settled doctrine that the jurisdiction of that court within its appointed orbit is exclusive: *Whiteside v. Whiteside,* 8 Harris 473; *Shollenberger's Appeal,* 9 Harris 337; *Black v. Black,* 10 Casey 354; . . . But it is not in every case, which may incidentally bear upon the settlement of the estate of a decedent, that its jurisdiction is exclusive; otherwise, all remedies for the recovery of claims against such estates would necessarily be drawn within its vortex. This has never been pre-

tended: *McLean's Executors v. Wade,* 3 P. F. Smith 146; *Sergeant's Executors v. Ewing,* 6 Casey 75." See also *Linsenbigler v. Gourley,* 56 Pa. 166, and *Wickersham's Appeal,* 64 Pa. 67.

In a case of doubt as to whether or not an interest in a decedent's estate had vested in a debtor, a court of common pleas would refuse to permit an attachment of such an interest and would direct the creditor to await the determination of the question by the orphans' court. As this court said in *Penna. Co., Exr., v. Youngman et al.,* 314 Pa. 277, 282, 171 A. 594: "Defendant's contingent interest could not be seized: *Patterson v. Caldwell,* 124 Pa. 455, 17 A. 18, *but, from the time it vested, it became subject to attachment, like any other property* [italics supplied] coming into the hands of the garnishee. . . . *Frazier v. Berg,* 306 Pa. 317, 325, 159 A. 541." That defendant's interest had vested in him was a *fact* which the court was not required to ignore because of the garnishee's assertion of its nonexistence.

We therefore uphold the refusal of the court to dissolve the attachment but in order that the judgment entered should conform to the precedents laid down by this court we modify the judgment entered so that it reads as follows:

Judgment is entered in favor of the plaintiff and against the garnishee, Alexander Wilson, Jr., Executor and Trustee under the will of Alexander Wilson, deceased, *qua executor and trustee,* in the sum of $9,917.42 with costs, and interest from October 27, 1937, to the extent that the same may become payable after due determination of the Orphans' Court, out of the share or interest of Edgar M. Wilson, defendant, in the Estate of Alexander Wilson, deceased. All further proceedings must abide such determination. As thus modified, the judgment is affirmed.