R. E. PATTERSON ET AL. v. J. A. CALDWELL ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILA-
DELPHIA COUNTY.

Argued January 25, 1889—Decided March 4, 1889.

1. Whilst equity will uphold assignments of contingent interests and expectancies, if fairly made and not against public policy, yet only that which has a present and certain existence, although its possession and enjoyment may be postponed for a time, may be seised by an execution attachment.

(a) The will of a testator created spendthrift trusts as to the income of his residuary estate in favor of his children and grandchildren, and provided that " either at the death of the last survivor of my now living children or grandchildren who may be living at the time of my death, or at the expiration of twenty-one years from my own death, whichever event shall first happen," the principal of his estate should vest absolutely for distribution to those entitled to the income.

2. In such case, until one or the other of the events contemplated in the provision quoted shall occur, it cannot be determined who will be the recipients of the income at the time of distribution of the estate, and the interest of a child in the principal of it is therefore contingent and not subject to seizure on an execution attachment: Reed's App., 118 Pa. 215, distinguished.

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 220 July Term 1888, Sup. Ct.; court below, No. 797 March Term 1887, C. P. No. 1.

On March 23, 1887, J. A. Caldwell and others, trading as J. E. Caldwell & Co., obtained a judgment against Mrs. L. H. Lynde for the sum of $3,758.82, and issued thereon an execution attachment summoning Robert Emmet Patterson and

others, the executors and trustees under the will of Robert Patterson, deceased, and the Central National Bank, as garnishees. Served.

To the interrogatories filed the garnishees answered, in effect, that they had no property in their hands, etc., in which Mrs. Lynde had any interest, but that they were executors and trustees under the will of Robert Patterson, deceased, and that Mrs. Lynde had the right under said will to receive a share of income, which, however, under the terms of the will, was not attachable, and that the nature and extent of her interest would appear from a copy of said will attached to the answer.

Supplemental and more specific interrogatories were then filed, to which the garnishees answered that they were advised that, as appeared by the will, a copy of which was filed with their former answer, the defendant had no interest in the estate in their hands which could be attached in this proceeding, and suggested that they should not be required to make further answer until that question should be determined.

It was stated in the history of the case, and undenied, that General Robert Patterson died in 1881, leaving four children, one of whom was Mrs. L. H. Lynde, the defendant in the judgment, and the issue of a fifth child, who was deceased. By his will, attached to said answers, which was dated May 13, 1879, and duly admitted to probate, he gave his residuary estate to his executors in trust, and provided:

That so long as his estate remained undivided the net income should be semi-annually divided into as many parts as there should be, at the time of such division, survivors of his children and the issue of any deceased child, the issue of any child to count collectively as one only, and that the executors should pay one of these parts to each of the surviving children and one to the issue of each deceased child; that as soon as it could be done fairly the trustees should divide the estate into as many equal parts as there should be, at the time of such division, survivors of his children and issue of deceased children, the issue of each child to count collectively only as one, and should designate each part, but should continue to hold and invest the estate after such partition; that the net income of the part designated for each of his children should be paid to such child semi-annually during its life; that the net income

of the part designated for the issue of any deceased child should be paid to said issue if they should be all grandchildren, during their respective lives, but if they should be descendants in a more remote degree, the said part should vest in and be transferred to them absolutely.

That upon the death of any of his children leaving issue surviving at the time of his or her death, the part of the estate, the income of which had been payable to such child, should be held by the trustees upon the same trusts, as to the estate itself and the income, as were declared concerning the parts of the estate set apart in the division for the issue of a deceased child, but that, if any of his children should die without leaving issue surviving at his or her death, the part of the estate, the income of which was payable to such child, should be held upon the same trusts for division and appropriation as if the same had never been divided and set apart from his estate.

That, upon the death of any grandchild leaving surviving issue, the part of the estate of which such grandchild had received the income should vest in the issue of such grandchild, but that, upon the death of a grandchild without leaving surviving issue, the part should be held upon the same trusts as were declared for the brothers and sisters and issue of brothers and sisters of such grandchild, and in default of such brothers and sisters, upon the same trusts as if said part were an originally undivided part of his estate.

That the payments of income, whenever directed to be made by the trustees, should be inalienable personal provisions for the parties to whom the same should be payable, and should not be anticipated, transferred, pledged or assigned, or made liable, by legal proceedings or otherwise, for their debts, engagements or contracts.

The paragraph upon which the present controversy arose, was the following:

"21. I direct that either at the death of the last survivor of my now living children and grandchildren who may be living at the time of my death, or at the expiration of twenty-one years from my own death, whichever event shall first happen, any part of my estate which shall then be held in trust under the terms of this my will for the payment of the income there-

of to any person or persons, shall vest absolutely in, and be transferred and conveyed by the said trustees or trustee to such person or persons, his her or their heirs and assigns, absolutely and in fee simple: And I declare that all trusts hereinbefore declared of and concerning my said estate are to be subject to this qualification."

Neither of the events contemplated, to wit, the death of all the testator's children, or the expiration of twenty-one years from his death, had yet occurred.

On April 21, 1888, the plaintiffs took a rule for judgment against the garnishees for want of sufficient answers, and on July 16, 1888, the court, ALLISON, P. J., delivered an oral opinion, holding that the judgment defendant had an attachable interest in the principal of the estate of Robert Patterson, deceased, and entered judgment generally in favor of the plaintiffs against the garnishees. Thereupon the garnishees took this writ and assigned the order entering said judgment as error:

*Mr. John G. Johnson* (with him *Mr. Frank P. Prichard*), for the plaintiffs in error:

1. Mrs. Lynde has no present interest in the principal of the estate, but only a bare possibility of obtaining an interest upon the happening of a contingency, and this possibility is not the subject of an attachment.

(*a*) The debt from a garnishee to a defendant, in respect of which it is sought to charge the former, must be absolutely payable at present or in the future, and not dependent on any contingency: Drake on Attachment, § 551; a doctrine repeatedly recognized in Pennsylvania: Bunn's App., 105 Pa. 49; Day v. Insurance Co., 111 Pa. 507; Peebles v. Meeds, 96 Pa. 150; and applicable with equal force to interests in decedents' estates: Rich v. Waters, 22 Pick. 563.

(*b*) The interest in a decedent's estate attachable under § 10, act of April 13, 1843, P. L. 235, is evidently a vested interest, not dependent on any contingency, just as the debts referred to are certain and not contingent debts. The absurd results pointed out by Mr. Justice GREEN, in Day v. Insurance Co., 111 Pa. 507, would all follow upon the attachment of a contin-

gent interest. No present judgment could be rendered, for it would be uncertain whether the interest would ever vest, and it would be anomalous to allow the attachment to stand and suspend all proceedings until the happening of the contingency years afterward. The meaning of the word "interest" in the attachment act is put beyond doubt by the interpretation given by this court, in Keene's App., 60 Pa. 504, to the same word in § 52, act of March 29, 1832, P. L. 207.

2. Even if the court were right in deciding that a mere possibility of a future interest could be attached, there was no warrant for the entry of judgment against the garnishees, until the contingency occurred on which the interest would accrue. What would be the form of such a judgment? Would it be that the plaintiffs recover their money out of the estate of the defendant in the hands of the garnishees, provided that years hence a contingency occurred by which the defendant would acquire an interest?

3. Moreover, the judgment de bonis propriis against an executor as garnishee is improper. It is sufficient to refer to Lorenz v. King, 38 Pa. 93; Maurer v. Kerper, 102 Pa. 444. Since the act of February 24, 1834, § 34, P. L. 77, even a defect in pleading, or a failure to plead, will not justify the rendition of such a judgment.

*Mr. Lewin W. Barringer*, for the defendants in error:

The attention of the court is called to the very broad phraseology of paragraph 21, of the will. Under its provisions, if Mrs. Lynde lives until the expiration of the trust, she gets the estate absolutely and in fee simple. If she dies, where does the principal of the estate go? The will directs that it goes to her heirs. The will, moreover, directs that it goes to her assignees. As no one can have an assignee after he is dead, it shows that she has the disposition of the principal during her life, and if she sell or convey it during her lifetime, her assignee will take the estate at the expiration of the trust. Wherefore, if she may sell and assign this estate, it is certainly liable to attachment and execution, as an attaching creditor becomes in law the assignee of such an estate. The point is well settled in Reed's App., 118 Pa. 215, 220–223; see also, Churchman's Est., 20 W. N. 367; Wickersham's App., 18 W.

N. 36 ; Pennock v. Eagles, 102 Pa. 290 ; Heath v. Page, 63 Pa. 108, 119–23.

OPINION, MR. JUSTICE McCOLLUM :

If Mrs. Lynde has a vested interest in the principal of the estate of her father this attachment can be sustained; if she has not, it must fall.

Her interest in the estate is defined by his will. It secures to her a share of the net income of the estate for a period designated in it. By its terms it creates an inalienable personal provision for her, which cannot be anticipated, pledged, or assigned, or made liable by legal proceedings for her debts, engagements, or contracts. It constitutes a spendthrift trust, and it is conceded that the income thus secured to her is not within the grasp of this attachment.

But it is claimed that she has an interest in the principal of the estate which may be attached and appropriated to the payment of her debts. The will appoints a time for the distribution and vesting of the principal of the estate. The persons who are then the recipients of the income of it will take it absolutely. But it is impossible to determine now who will at that time be entitled to receive the income and constitute the beneficiaries under the provisions of the will which dispose of the principal. We think, therefore, that Mrs. Lynde's interest in the principal of the estate is contingent. These conclusions result from a consideration of the whole will and are in accord with the manifest intention of the testator. It is quite evident that it was not his purpose to subject the principal of his estate to seizure and sale for the debts of his children and grandchildren, while he carefully placed the income of it beyond the reach of their creditors.

Reed's App., 118 Pa. 215, is relied on by defendants in error as sustaining their view that Mrs. Lynde has a vested interest in the principal of the estate. In that case the testator, having nine grandchildren, directed his executors to sell a certain portion of his farm, to divide the net proceeds of the sale into nine equal parts, and for the period of twelve years from the time of his decease to keep said net proceeds at interest and pay one-ninth of the interest annually to each of said grandchildren, " or, if any of them have died leaving heirs, then pay the same

to said heirs and at the full expiration of twelve years from my decease shall in like manner pay over the principal." In determining that the legacies to the grandchildren were vested at the death of the testator, it was said, inter alia, " It is to be noted that there is not in this will the faintest trace of an intent in case of the death of any of the grandchildren before the expiration of the twelve years to give the shares of those so dying to the survivors. The share of a grandchild that shall ' have died,' is to go to his heirs." But in our case, if Mrs. Lynde dies before the period appointed for the vesting of the estate, what she might have received had she survived that period, goes, not to her heirs, but, at a time fixed by the will, to persons designated by the will to receive it.

It is further contended by the defendants in error, that whatever may pass by an assignment is subject to attachment. This proposition is not tenable. In law an assignment is not effectual unless the subject matter of it has actual, potential existence. But equity will uphold assignments of contingent interests and expectancies, and things resting in mere possibility, if fairly made, and not against public policy ; not as a transfer operating in præsenti, for that can only be of a thing in esse, but as a present contract to take effect and attach as soon as the thing comes in esse : Power's App., 63 Pa. 443 ; East Lewisburg L. & M. Co. v. Marsh, 91 Pa. 96.

These assignments are enforced on the ground that the assignee is entitled to have immediate specific performance of the contract to assign, as soon as the property comes into existence in the hands of the assignor : Bispham's Eq., 215. An attachment execution reaches effects and interests that cannot be taken on a writ of fieri facias, but it is execution process and its office is to appropriate the property of the defendant to the judgment which supports it. That which has a present and certain existence although its possession and enjoyment may be postponed for a time, may be seized by it, but it cannot grasp expectancies or contingent interests. The consequences of a contrary doctrine are well described by Mr. Justice GREEN in Day v. New England Life Ins. Co., 111 Pa. 507. The first specification is sustained and this makes a discussion of the second unnecessary.

Judgment reversed.