### Phillips's Estate (No. 1).

*Wills—Vested and contingent remainders—Contradictory clauses—Intestacy.*

While there is no doubt that of two contradictory clauses in a will the first must give way, and the last must take effect, yet the two clauses must refer to the same subject-matter, and the last must be clearly inconsistent with the first.   If the main provision plainly covers the whole subject, and is defined in terms that exclude all doubt, and the subsidiary provision may by conjecture be made either general or partial, and may be capable by construction either of subverting entirely or of modifying only the original gift, such a subsidiary provision must in the ordinary case be confined to its partial and restricted operation.

In the construction of doubtful, inconsistent or contradictory clauses in a will, that construction is favored which avoids an intestacy.

Testator gave his residuary estate after the termination of certain life estates to his nephews and nieces " and the issue of any of them, that may be deceased, living at the time of my death, share and share alike, such issue taking however only their parents' share and in default of issue, any such share shall be divided among the survivors of them as aforesaid." By a subsequent clause he directed :  " It is my will and I so direct that no nephew or niece or representative of any such shall have the right to

call to account with my executors or trustees until such time as he or she may be entitled to receive in his or her possession the share of the residuary estate, nor shall any estate vest until such time." *Held* (1) that the testator in using the word " vest " in the later clause of his will, used it in the sense of " payable " or " to vest in possession or take effect in possession," and not in its technical sense ; (2) that the nephews and nieces took an estate, the title to which vested in them upon the death of the testator ; (3) that the later clause in the will was merely intended to protect his executors from annoyance on the part of his nephews and nieces, or their representatives, i. e., executors or administrators.

Argued Jan. 22, 1903. Appeal, No. 96, Jan. T., 1902, by Henry Cleremont Moses, Altamont P. Moses and Franklin J. Moses and Albert B. Weimer, executor of the estate of Edward P. Allinson, deceased, assignee of the share of Charles L. Phillips, from decree of O. C. Phila. Co., Jan. T., 1885, No. 320, dismissing exceptions to adjudication in estate of Henry M. Phillips, deceased. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication.

In addition to the facts stated in the opinion of the Supreme Court, it appeared that the testator died in 1884. One sister in 1891 and the other in 1901. All the nephews and nieces mentioned in the will were living at testator's death, but two nieces and four nephews died before the death of the last sister, unmarried and without issue. Charles L. Phillips made assignments of his share as follows: (1) Assignment, August 13, 1887, to John H. Scott, for $6,530, with interest; (2) assignment, February 17, 1890, to Lydia S. Hinchman, for $32,500; (3) assignment, October 11, 1899, to Edward P. Allinson, for balance of share.

PENROSE. J., the auditing judge, sustained all the assignments made by Charles L. Phillips, but, holding the interest of the assignor in his uncle's estate to be vested and not contingent, ordered distribution of the one half of the residue in shares of one eighth to each of the nephews living at the testator's death instead of one fourth to each of the survivors " upon the death of both of my sisters," resulting in the making of the share of Charles L. Phillips too small to pay any considerable part of the debt covered by the assignment to Edward P. Allinson.

Exceptions to the adjudication were dismissed by the court in banc.

*Error assigned* was in dismissing exceptions to adjudication.

*William H. Burnett*, with him *John Weaver*, for Henry Cleremont Moses, Altamont P. Moses and Franklin J. Moses, appellants.—The shares of the nephews and nieces are contingent: Hayes v. Goode, 7 Leigh (Va.), 452–496; Glanvill v. Glanvill, 2 Mer. 38; Comport v. Austen, 12 Sim. 218; Wakefield v. Dyott, 4 Jur. (N. S.) 1098; Russel v. Buchanan, 7 Sim. 628.

Estates in remainder vest at the earliest possible period, but the rule is subject to the qualification " unless there is a clear manifestation of the intention of the testator to the contrary." Doe v. Considine, 6 Wall. 458; Raney v. Heath, 2 Patt. & Heath, 206; Corbin v. Mills, 19 Gratt. 438; Woelpper's Appeal, 126 Pa. 562.

The manifest intention of the testator must have effect unless by giving it effect some rule of law is violated: Hinton v. Milburn, 23 W. Va. 166.

The will of Henry M. Phillips expressly directs when the estate is to vest and there is no room for implication or doubt as to construction: Knight v. Cameron, 14 Ves. Jr. 389; Bernard v. Mountague, 1 Merivale, 422; King v. Cullen, 2 De Gex & Smale, 252.

There is nothing in the provisions of the will to show that testator used the word " vest " in other than its primary meaning.

Even if the clause in the first part of the will gives a vested estate, the last clause provides that the estate shall not vest until a certain time, and the last prevails: Stickle's App., 29 Pa. 234; Newbold v. Boone, 52 Pa. 167; Fetherman's Est., 40 W. N. C. 313; Krebs's Est., 184 Pa. 222.

An analysis of the paragraph of the will in which the word " vest " occurs shows that it was used in the technical sense: Porter's App., 94 Pa. 332.

The testator died intestate as to the shares of the nephews and nieces, who died subsequent to his death, but before the death of the last life beneficiary: In re Stansfield, L. R. 15 Ch. D. 84; Williams v. Neff, 52 Pa. 326; Bell's Est., 147 Pa. 389.

*S. Davis Page*, with him *S. K. Louchheim*, for Albert B. Weimer, executor of Edward P. Allinson, deceased, appellant. —The intention of the testator must govern : McKeehan v. Wilson, 53 Pa. 74 ; Porter's App., 94 Pa. 332 ; Biddle's App., 99 Pa. 525 ; Finney's App., 113 Pa. 11.

There can be no doubt of the meaning of the words " nor shall any estate vest until such time." This testator must be presumed to have known the meaning of legal terms, and to say that when he employed these words he did not use them in their technical sense, or that he misunderstood their legal effect is to cast an imputation upon his ability as a lawyer not justified by his reputation : Eby's App., 50 Pa. 311 ; Ivins's App., 106 Pa. 176.

Where there is an expressed direction as to the time of vesting, there can be no room for a different interpretation : Rowland v. Tawney, 26 Beav. 65 ; In re Thatcher's Trusts, 26 Beav. 365.

Even if the latter clause " nor shall any estate vest until such time " be utterly inconsistent with the donating terms of the bequest, it must prevail, because it is the expression of the latest intention of the testator : Stickle's App., 29 Pa. 234 ; Hart v. Stoyer, 164 Pa. 523.

*Victor Guillou*, for Robert D. Maxwell, executor of Henry Phillips, deceased, for appellee.—Where a fee is clearly given, subsequent inconsistent devises or bequests will not reduce it to a less estate unless the intention of the testator so to do unequivocally appear : Kinter v. Jenks, 43 Pa. 445 ; Beck's Appeal, 46 Pa. 527 ; Second Reformed Presbyterian Church v. Disbrow, 52 Pa. 219 ; Bowlby v. Thunder, 105 Pa. 173 ; Hopkins v. Glunt, 111 Pa. 287 ; McIntyre v. McIntyre, 123 Pa. 323 ; Good v. Fichthorn, 144 Pa. 287 : Boyle v. Boyle, 152 Pa. 108 ; Levy's Estate, 153 Pa. 174 ; Heck's Estate, 170 Pa. 232.

In this case the testator gives not only no unequivocal desire to cut down an estate already given, but goes no further than to attempt to deny a fact, viz : that the estate he gives was not to be called vested.

His words must be considered as merely " precatory," in which event they are of no possible validity as restricting the estate already given : Pennock's Estate, 20 Pa. 268 ; Jauretche v. Proctor, 48 Pa. 466.

One more undoubted result is also fully apparent if the judgment of the court below is set aside, and that result deeply and always obnoxious to the law, viz.: that if this testator did not make a valid bequest to his nephews under his will as shown, he died intestate as to the shares so bequeathed to anyone dying before the life tenants. A result, not only obnoxious always to the law, but one that is particularly so in this case, where one of the ablest and astutest members of our local bar, one whose reputation is still as fresh and green as when his great talents were present with us, is to be accused of not knowing how to draw a will, especially his own, and that in that solemn moment when he disposed of the ample fruits of his industry he meant to die intestate as to any portion of his estate.

OPINION BY MR. JUSTICE BROWN, May 4, 1903:

The testator gave the income from his residuary estate to his sisters, Ellen and Emily, for life. Upon the death of both of them he directed certain legacies to be paid, and then gave all of the remainder to certain nephews and nieces. Whether at his death each of them took a vested interest in his estate depends upon his intention, to be gathered from the three following clauses in his will:

" And all the residue and remainder of my residuary estate . . . . one half part thereof I give, devise and bequeath unto the daughters of my deceased brother J. Altamont Phillips, namely, Catharine, Ellen and Rebecca, and the issue of any of them, that may be deceased, living at the time of my death, share and share alike, such issue taking however only their parents' share and in default of issue, any such share shall be divided among the survivors of them as aforesaid.

" And the other one half part thereof, I give, devise and bequeath unto my nephews as follows : Henry, Edwin and Charles L., sons of my deceased brother, J. Altamont Phillips, and Myer, H. Cleremont, Altamont P., Zalegman P., and Dr. Franklin J., sons of my sister Catharine Moses, and the issue of any or them, that may be deceased, living at the time of my death, share and share alike, such issue taking however only their parents' share, and in default of issue, any such share shall be divided among the survivors of them as aforesaid.

" Item. It is my will and I so direct that no nephew or niece

or representative of any such shall have the right to call to account with my executors or trustees until such time as he or she may be entitled to receive in his or her possession the share of the residuary estate, nor shall any estate vest until such time."

With the first two clauses standing alone, it is clear that each nephew and niece, living at the time of the testator's death, took a vested interest in his estate. The same is true of the issue of any nephew or niece so named who might have died during the lifetime of the testator. The words of the first two clauses are so plain and the intention of the testator is so unmistakably expressed that, though he unquestionably could by a later clause provide that the interest should be purely contingent and not vest until the happening of an event after his death, he will not be understood to have done so unless such later clause must be read as expressing a change of his intention so clearly found in the lines immediately preceding it: Kiver v. Oldfield, 4 De G. & J. 30; Good v. Fichthorn, 144 Pa. 287; Heck's Estate, 170 Pa. 232; Whelen's Estate, 175 Pa. 23. " While there is no doubt that of two contradictory clauses in a will the first must give way, and the last must take effect, yet the two clauses must refer to the same subject-matter, and the last must be clearly inconsistent with the first. If the main provision plainly covers the whole subject, and is defined in terms that exclude all doubt, and the subsidiary provision may by conjecture be made either general or partial, and may be capable by construction either of subverting entirely or of modifying only the original gift, such a subsidiary provision must in the ordinary case be confined to its partial and restricted operation. It is said in 1 Redfield on Wills, *438, that 'plain and distinct words are only to be controlled by words equally plain and distinct.' Such words, to have a controlling effect, must at least possess a definite and certain meaning. The clearly expressed purpose of a testator is not to be overborne by modifying directions that are ambiguous and equivocal, and may justify either of two opposite interpretations. Such directions are to be so construed as to support the testator's distinctly announced main intention : " Sheetz's Appeal, 82 Pa. 213.

Does the third clause quoted postpone the vesting of the interest until the death of the two sisters of the testator? Its last

words are—and upon these alone the appellants rely—that no
estate shall vest until the nephews and nieces, or their issue,
are entitled to receive their respective shares, which would
be upon the death of both sisters; but what precedes the last
words of the clause is consistent with the intention of the
testator, as expressed in the first two clauses, that the interest
should vest at his death. In providing that his executors
should not be annoyed by his nephews and nieces, whose dis-
positions from the appeals before us we can fairly assume he
knew, he restricted not only their right, but that of the "rep-
resentative of any such" to call the trustees to account.
"Representative," as here used, can have no other than its
natural meaning of personal representative—an executor or
administrator—and, in giving it such meaning, the intention
of the testator is continued; for the words were useless if
the interest of each nephew and niece was only in expectancy
and ceased with his or her death. But because the testator
intended that the interests should vest immediately, he ex-
tended his restriction to the personal representative of any de-
ceased nephew or niece. How, then, did he use the word
"vest?"

"If the testator has himself subjoined to the gift a declara-
tion that it shall vest at a stated period, and if there be noth-
ing in the context to show that the word 'vest' is to be taken
otherwise than in its strictly legal sense, all discussion is, of
course, precluded; for a legacy cannot vest at two different
periods. But a question generally arises in these cases as to
the real meaning to be attributed to the word:" 2 Jarman on
Wills (Am. ed.), 467.

Recognized meanings of the word "vest" are "payable"
and "to vest in possession or take effect in possession:" 2 Jar-
man on Wills, supra; Thompson v. Thompson, 28 Barb. 432.
The manifest purpose of the clause being protection to the
accountants, and all but the last eight words being consistent
with the clear intent expressed in the two preceding clauses,
the meaning of the word "vest" which ought to be adopted
is one which will not strike down, but sustain a clear and
general intent. In attributing to it such meaning, often given
to it, the apparent inconsistencies in the will disappear and
the intention of the testator cannot be obscured by any argu-

ment based on what is generally regarded as the mere technical meaning of the term.

As another reason why the word should be read as meaning "payable" or "taking effect in possession," the learned judge below very pertinently said : "And, finally, there is the argument which in doubtful cases is conclusive that, as there is no limitation over except in the case of the death without issue of a nephew or niece in the lifetime of the testator, a death without issue after his death in the lifetime of the sisters will cause an intestacy; which is never permitted if by any fair construction or interpetation it can be avoided."

Appeals dismissed at the costs of appellants, and as to them the decree is affirmed.