## Storb Appeal.

568

Argued November 19, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*William C. Storb,* with him *Stein, Storb and Mann,* for appellant.

*F. Lyman Windolph,* with him *Windolph, Burkholder & Hartman,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, June 30, 1960:

This appeal presents for our determination the question whether the words "lawful issue" in a certain life insurance trust agreement include a child adopted by the settlor's daughter subsequent to the execution of the agreement in 1936 but prior to the settlor's death in 1958.

On May 19, 1936 Osborne H. Cilley (herein called Cilley) was the father of two children, Donald L. Cilley, then aged 24 years, and Ruth E. Cilley, then aged 19 years, both children having been born of a marriage between Cilley and Blanche E. Cilley. The record indicates that Cilley was married twice; first to Blanche E. Cilley, now an incompetent, and later to Frances A. Cilley.[1]

On May 19, 1936 Cilley turned over to the Fulton National Bank of Lancaster (herein called Bank), under the terms of a written life insurance trust agreement, seven policies of life insurance on his, Cilley's, life with various life insurance companies in the total amount of $36,500.[2] This agreement provided, inter alia, that: (1) the Bank was to hold the insurance policies "without any obligation of any nature in respect thereto, other than the safekeeping thereof" until the policies became payable by reason of Cilley's death; (2) on Cilley's death, the Bank was to receive the proceeds of the insurance and divide them into two parts: a one-third part was to be paid outright to Blanche E. Cilley, if she were then living, and a two-thirds part to be held as a trust fund;[3] (3) the Bank was to pay the net income from the trust fund in regular installments to

---

[1] The record, however, does not indicate when the first marriage was dissolved nor when the second marriage took place.

[2] The Bank became the named beneficiary on these policies.

[3] If Blanche E. Cilley predeceased Cilley then her one-third part of the insurance proceeds would go into this trust fund.

Donald L. Cilley and Ruth E. Cilley until "their arrival at the age of thirty (30) years, respectively", when each child was to be paid one-half of the principal of the fund; (4) in the event that either Donald L. Cilley or Ruth E. Cilley, or both of them, died before the time of distribution of their shares *"leaving lawful issue to survive either or both of them"*, said "lawful issue" would take per stirpes the share of the parent and, if either child died without "lawful issue to survive", then the entire fund would go to the surviving child; (5) if both children died before the time for distribution of this fund without leaving lawful issue to survive, then the balance of the fund was to be distributed "among the lawful heirs of [Cilley], in accordance with the Intestate Laws of the State of Pennsylvania, the same vesting as of the date of the death of Blanche E. Cilley . . . if she shall survive [Cilley]"; (6) Cilley retained the "full right to exercise any benefit, option or privilege" under the policies except as to Blanche Cilley's share the provision for which was "declared to be irrevocable"; (7) it was "distinctly understood and agreed that [the agreement] shall be revocable at any time during his life by [Cilley], except as to the provision in favor of Blanche E. Cilley . . ., which shall be irrevocable, and *that no interests of any kind shall vest in any parties . . . until the date of the death of* [Cilley]" and Cilley reserved the right to "revoke, alter or modify" the agreement, in whole or in part.

On January 2, 1948, Cilley, in writing, withdrew from the Bank two-thirds of the proceeds of one matured life insurance policy and revoked the agreement insofar as it related to another life insurance policy.

Cilley died April 15, 1958. Donald L. Cilley survived his father, but Ruth E. Cilley (then Ruth C. Baer) predeceased her father, having died on December 28, 1955. Of Ruth E. Cilley's marriage to Kenneth

F. Baer no children were born, but on November 13, 1953—approximately two years prior to her death and approximately four and one-half years prior to Cilley's death, she and her husband adopted a child, known now as Kenneth L. Baer and now aged approximately seven years. Subsequent to his daughter's death Cilley made no change whatsoever in the trust agreement but did make a new will the effect of which was to exclude the adopted child from sharing in that portion of his estate which would pass by will.

The Bank filed its First and Final Account on June 5, 1958 and the Orphans' Court of Lancaster County appointed the appellant as guardian ad litem to protect the interests of the adopted child. The court, at audit, held that the adopted child did not take the share which his adopted mother, Ruth Baer, would have taken had she survived her father. Exceptions to this decree nisi were dismissed and a final decree was entered from which this appeal was taken.

The court below considered that the agreement between Cilley and the Bank became effective on May 19, 1936, and, therefore, the Intestate, Wills and Estates Acts of 1947[4] (which, in the words of the court below, completed "the grafting of adopted person upon the family tree of adopting parent and parents") were inapplicable in the construction of the agreement and that, at the time the agreement became effective, the law was settled that the word "issue" did not include an "adopted child": *Howlett Estate,* 366 Pa. 293, 297, 77 A. 2d 290.

Prior to the passage of the Acts of 1947, supra, an adopted child was not considered to be embraced with-

---

[4] Intestate Act, April 24, 1947, P. L. 80, §8, 20 PS §1.8; Wills Act, April 24, 1947, P. L. 89, §14(6), as amended Feb. 17, 1956, P. L. (1955) 1070, §1, 20 PS §180.14; Estates Act, April 24, 1947, P. L. 100, §14(3), 20 PS §301.14.

in the word "issue".[5] In *Howlett Estate,* supra, the testator died in 1921 and, under his will—executed in 1907—, he created a trust with life estates to his children and then to a child's issue, or, in default of issue, to surviving children and the issue of deceased children. During the term of the trust a son died leaving no natural born children but a daughter who had been adopted in 1897. Ruling that this adopted daughter of the deceased son was not entitled to take as "issue", this Court stated (p. 297) : " 'Issue' is not synonymous with 'children'. 'Issue' means issue of the body, offspring, progeny, natural children, physically born or begotten by the person named as parent: [citing cases]. An adopted child is issue of his natural parents and not of his adopted ones: [citing cases]".[6] If the effective date of the conveyance under the 1936 agreement was *prior* to January 1, 1948—the date upon which the Estates Act of 1947, supra, became operative—then *Howlett* will control the construction of the word "issue".

In determining the rights of inheritance of "chosen" or adopted children we are bound by the statutes of inheritance at the time the inheritance became effective and, in the case of a will, by the terms of the will itself: *Howlett Estate,* supra; *Collins Estate,* 393 Pa. 195, 200, 201, 142 A. 2d 178; *Holton Estate,* 399 Pa. 241, 159 A. 2d 883. In the present situation, however, we are dealing not with the rights of inheritance generally but with the rights of beneficiaries under the provisions of an unfunded life insurance trust agreement.

---

[5] Cf: *Estate of Rowan,* 132 Pa. 299, 19 A. 82.

[6] In *Collins Estate,* 393 Pa. 195, 209, 142 A. 2d 178, we said: "issue strongly connotes a blood relationship which arises solely by actual birth of the child to the parent".

The present issue is not whether this 1936 agreement was testamentary or non-testamentary[7] nor whether under this agreement a conveyance was contemplated. By the Act of 1957, supra, the legislature has declared that this type of unfunded life insurance trust must be construed as non-testamentary and to that mandate our judicial construction must yield. By Section 1(2) of the Estates Act of 1947, supra, a conveyance has been defined as ". . . an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation". The 1936 agreement did create certain legal interests—even though contingent—in the subject matter of the agreement and did contemplate that a conveyance would take place. This trust agreement gave rise to the creation of two separate interests: an interest in the Bank to receive from the insurance companies the proceeds of the policies as such matured upon the death of Cilley and an interest in the persons named in the trust agreement to receive from the Bank such proceeds.[8]

Our problem is to determine *when* the conveyance contemplated by the agreement took place. If the conveyance became effective prior to January 1, 1948 then, under *Howlett,* supra, the word "issue" excluded adopted children; if the conveyance became effective after January 1, 1948, then Section 14(3) of the Estates

---

[7] It is beside the point to label this agreement as testamentary or non-testamentary: *Brown Estate,* 384 Pa. 99, 119 A. 2d 513; *Henderson Estate,* 395 Pa. 215, 149 A. 2d 892; Act of July 11, 1957, P. L. 792, §1, 20 PS §301.7a.

[8] As the Supreme Court of Oregon well stated in *Gordon, Exrx., etc., v. Portland Trust Bank,* 201 Or. 648, 271 P. 2d 653; "Its [the Bank's] source of title was the promise in the policies not the trust agreement". On the other hand, the beneficiaries' source of title was the promise in the trust agreement and not in the policies.

Act of 1947, supra,—equating adopted and natural children—must control our construction of the word "issue". Section 14(3) provides: "Adopted children. In construing a conveyance to a person or persons described by relationship to the conveyor or another, any person adopted before the *effective date* of the conveyance shall be considered the children of his adopting parent or parents and not the child of his natural parents. . . ." (Emphasis added). Our resolution of the problem must depend upon what Cilley intended and such intent is to be determined, if possible, by an examination of the language of the agreement: *Swope Estate*, 383 Pa. 494, 119 A. 2d 57; *Rice v. Shank*, 382 Pa. 396, 115 A. 2d 210.

Cilley expressly retained the right to exercise any benefit, option or privilege given to him under the provisions of the insurance policies as well as the right to revoke the agreement, in whole or in part,[9] except as to Blanche Cilley's share. More important, however, than the reservation of these important rights was Cilley's self directed construction of the language of the agreement "*that no interest of any kind shall vest*[10] *in any party . . . until the date of [his] death. . . .*" More emphatic and absolute language could not have been employed to express Cilley's intent that the conveyance of any legal interest should not take place until his death—a post mortem conveyance. That language, coupled with the other rights reserved by Cilley, renders inescapable the conclusion that it was Cilley's intent that no conveyance to the ultimate trust beneficiaries take place until his death had occurred and the

---

[9] It is to be noted that twelve years after the execution of this agreement Cilley did exercise the right to revoke in part this agreement.

[10] *Phillips's Estate (No. 1)*, 205 Pa. 504, 55 A. 210, interpreted the word "vest" in a vastly different factual context.

Bank had received the proceeds of the insurance policies.

In actuality, the 1936 agreement contemplated two conveyances: a conveyance of the life insurance policies to the Bank whereby the Bank became the beneficiary under the policies subject to change, in whole or in part, by Cilley, and a conveyance of the proceeds of the policies by the Bank to the beneficiaries named in the trust agreement, a conveyance which was to take place upon the occurrence of two events, i.e., Cilley's death and the receipt by the Bank of the insurance proceeds, and then only if Cilley had not revoked, in whole or in part, the trust agreement. The argument that such a construction renders this agreement testamentary is without merit. The legislature has seen fit to place life insurance trusts in a separate category and has declared that such trusts shall be construed only as non-testamentary. A construction that such legislation is applicable only if the conveyance takes place during the settlor's lifetime amounts to judicial legislation and a reconstruction of the legislative language. In view of the fact that Cilley's death occurred subsequent to January 1, 1948, the conveyance to the beneficiaries named in the trust agreement could not become effective until subsequent to that date. It was not until his death that the beneficiaries named in the trust agreement secured any vested interest in the proceeds of the policies.

In *McKean Estate,* 366 Pa. 192, 195, 77 A. 2d 447, it was said: ". . . where a settlor, by his deed vests a present interest in the beneficiaries but reserves a beneficial interest and also a power to revoke or modify the deed in whole or in part, such interests are not thereby constituted *mere expectancies* but are *present vested* interests: [citing cases]". *McKean,* supra, is inapposite: (a) the factual situation therein was dissimilar;

(b) A named beneficiary in a life insurance policy—wherein the insured reserves the right to change the beneficiary—has no vested interest in the policy or its proceeds during the insured's lifetime. See: *Fidelity Trust Co. v. Travelers Insurance Co.*, 320 Pa. 161, 181 A. 594; *Knoche v. Mutual Life Insurance Company of New York*, 317 Pa. 370, 176 A. 230; *Riley v. Wirth*, 313 Pa. 362, 169 A. 139; (c) the language in the present agreement expressly negatives a vesting of interests.

By its clear, unambiguous language the 1936 agreement did not constitute a present conveyance to the beneficiaries named in the trust agreement. Moreover, their interests created by the 1936 agreement were mere expectancies which could not be the subject of a grant or conveyance: *Patterson v. Caldwell*, 124 Pa. 455, 17 A. 18; *Lennig's Estate*, 182 Pa. 485, 38 A. 466. The 1936 agreement did contemplate a conveyance to them but a conveyance which would take place in the future upon the happening of two events, i.e., Cilley's failure to exercise during his lifetime the power of revocation reserved under the terms of the agreement and the receipt by the Bank of the proceeds of insurance. When and only when these events occurred was a conveyance to take place, a conveyance by the Bank to the persons and in the shares designated in the 1936 agreement of the proceeds of the insurance. Since these events did not occur until after the effective date of the Estates Act of 1947, supra, the date on which the conveyance became effective necessarily was subsequent to the effective date of said statute and Section 14(3) thereof became applicable. The legislative purpose so manifestly expressed in Section 14(3) brings an adopted child within the words "lawful issue" if the adoption antedated the effective date of the conveyance: Kenneth L. Baer, whose adoption took place prior to the effective date of this conveyance, is within such class.

The legislature, through the statutes of adoption and inheritance, now has placed children chosen by adoption and children naturally born in the same status. In the instant situation this adopted child is "lawful issue" of his deceased mother and should take the share to which she was entitled under the terms of this agreement.

Decree reversed. Costs on appellee.

DISSENTING OPINION BY MR. JUSTICE BELL:

I disagree with the Court's conclusion and the reasons given to support it.

Cilley created a revocable inter vivos life insurance trust dated May 19, 1936; his last will was dated January 28, 1956; he died April 15, 1958. The majority admit (a) that when Cilley created his trust in 1936 "issue" did not include an *adopted* child, and (b) that when his daughter Ruth 17 years thereafter adopted a child Cilley drew a new will the effect of which was to exclude the adopted child. It is clear that in his inter vivos trust and in his will Cilley wished and intended to exclude his daughter's adopted child from his gifts to "lawful issue". Has the legislature nullified and voided Cilley's intent?

What are the facts? On May 19, 1936 Cilley *executed and delivered* to the Fulton National Bank of Lancaster a Life Insurance Trust Agreement which was simultaneously executed by the bank. Cilley simultaneously transferred and delivered to the bank the seven policies of life insurance on his life, which were set forth in and made a part of the Agreement. This Agreement pertinently provided that one-third of the proceeds of the life insurance policies were to be paid *absolutely* to Cilley's wife Blanche, if Blanche, was liv-

ing at his death (as she was); it further provided that Blanche's interest was to be *irrevocable*. With respect to the other two-thirds of the proceeds of the life insurance policies, the trust (which was declared to be revocable) provided for the payment by the Trustee of income to settlor's son and daughter until their arrival at the age of 30 years and upon their respective deaths prior thereto, one-half of the income and principal was to be paid to the deceased daughter's (or son's) *lawful issue,* and in default of lawful issue to the survivor.

When the revocable inter vivos insurance trust was executed in 1936 and the insurance policies which were included therein were delivered to the Trustee in accordance with the terms of the trust, the law was clearly settled (as the majority concede) that the word "issue" did *not* include an adopted child: *Howlett Estate,* 366 Pa. 293, 77 A. 2d 290.

The majority opinion reaches its conclusion that "lawful issue" includes a child adopted 17 years thereafter by the settlor's daughter under the theory that "the 1936 agreement *did not constitute a present conveyance.*"\* The majority reason that the 1936 Agreement *became effective only at the settlor's death, since it dealt with policies which took effect only at settlor's death.* This, as we shall see, is contrary to many prior decisions of this Court, as well as to the Estates Act of 1947, as amended by the Act of July 11, 1957, §8, P. L. 792.

In *McKean's Estate,* 366 Pa. 192, 77 A. 2d 447, the Court said: "Prior to the Estates Act of 1947, this Court repeatedly decided that where a settlor, by his deed vests a present interest in the beneficiaries but reserves a beneficial interest [for life] and also a power to revoke or modify the deed in whole or part, such interests are not thereby constituted mere expectancies

---

\* Italics throughout, ours.

but are present vested interests: Dickerson's Appeal, 115 Pa. 198, 8 A. 64; Lines v. Lines, 142 Pa. 149, 21 A. 809; Dolan's Estate, 297 [279] Pa. 582, 124 A. 176; Shapley Trust, 353 Pa. 499, 46 A. 2d 227; Lyon Trust, 164 Pa. Superior Ct. 140, 63 A. 2d 415. See also: Restatement, Trusts, Sec. 57 (1); 43 Harvard Law Review p. 521; 78 University of Pennsylvania Law Review p. 626; Scott on Trusts, Sec. 57.1."

That Court then *rejected* the contention of the settlor's wife—which the majority opinion has now adopted—that the Estates Act of 1947 was applicable *because the conveyance did not become effective until the death of her husband* which occurred after the date of the Act.

It is clear under the prior decisions of this Court, and likewise within the meaning of the Estates Act of 1947, as amended in 1957, that the 1936 trust Agreement constituted a "conveyance" of assets *at the time it was executed* and the assets were delivered to the Trustee. The word "conveyance" is thus defined in Section 1(2) : " 'Conveyance' means an act by which it is intended to create an interest in real or personal property, *whether the act is intended to have inter vivos or testamentary operation.*" The majority opinion admits that the 1936 trust Agreement was "a conveyance," but holds that it was intended to be testamentary because the interests created therein took effect only upon the death of the testator. While the decisions of this Court all hold that the Agreement was not testamentary, it is immaterial under the Estates Act whether the conveyance is intended to have inter vivos or testamentary operation.

The majority opinion is based on the theory recognized in a (two line) per curiam opinion in *Brown Estate*, 384 Pa. 99, 119 A. 2d 513. The majority has apparently overlooked the fact that *Brown Estate* was

changed by the Legislature which revived the former law and this revival was approved in *Henderson Estate,* 395 Pa. 215, 149 A. 2d 892. In *Henderson Estate* this Court held that *an unfunded revocable inter vivos insurance trust is not testamentary* and a surviving spouse has under the Estates Act, no rights in such a trust (created by the deceased spouse) and no right to any of the proceeds of a life insurance policy included in such trust.

In *Henderson Estate* the Court said (pages 225, 226, 228, 229) : *"Since some doubt apparently remained on the question of whether* the designation of beneficiaries in a policy of life insurance, or *the creation of an unfunded revocable insurance trust was testamentary,* the Estates Act of 1947 was further amended on July 11, 1957, *in order to make clear that such acts were not testamentary.* This was accomplished by adding a new section :

" 'Section 8. Designation of Insurance Beneficiaries Not Testamentary.

" 'The designation of beneficiaries of life insurance shall not be considered testamentary, *regardless of whether* the insurance contract designates the ultimate beneficiaries or makes the proceeds payable, directly or indirectly, to a trustee of a trust under a will or under a separate trust instrument which designates the ultimate beneficiaries, *and regardless of whether* any such trust is amendable *or revocable,* or both, or is funded *or unfunded,* and notwithstanding a reservation to the settlor of all rights of ownership in the insurance contracts.' The Joint State Government Commission made the following comment: 'This section would replace section 8 of the Estates Act which was omitted when the rule against accumulations was changed. It has two purposes. The most important is *to make it clear that unfunded insurance trusts are not testamentary*

and to that extent the law as stated in Brown Estate, 384 Pa. 99 is changed. . . .'

. . .

"The Unfunded Revocable Insurance Trust. . . . The trustee was merely the depository of the policy, with no obligation or active duties until after Henderson's death. Premiums were paid by Henderson, the settlor, and not by the trustee. The settlor reserved the right to amend the trust and to change the trust beneficiaries, which he did, as above set forth. He likewise reserved the right to revoke the trust but never exercised this right.

"The trustee was a mere custodian, the trust was a mere shell. *When the trust was created in 1952* or amended in 1953, *it was a 'conveyance of assets'* within the meaning of §11 of the Estates Act, and under Brown Estate, supra, the widow would have been entitled to one-half of this unfunded insurance trust under her election to take against her husband's will and against this conveyance, if no changes had been made by the above-mentioned Legislative Acts of 1956 and 1957. . . . However . . . the Legislature had clearly stated . . . in 1957 that the designation of beneficiaries of life insurance *shall not be considered testamentary regardless of whether the proceeds were payable* to a named third party individual or to a testamentary trustee, or *to an inter vivos trustee, and regardless of whether the trust was amendable or revocable or both, or funded or unfunded.*

"The persons who were named by Henderson on October 28, 1957, as beneficiaries under the provisions of this insurance trust *acquired whatever rights they had at that time.* Since the trust was merely a revocable shell, they acquired only an expectancy. . . . While this unfunded insurance trust was a 'conveyance of assets' within the meaning of §11 of the Estates Act of

582

1947, *it is clear* . . . that under §8 of the 1957 Amendment to the Estates Act of 1947 *Henderson's unfunded insurance trust was not testamentary.*"

It is clear beyond any doubt that the revocable trust Agreement of 1936 (1) was a valid inter vivos Agreement which under the decisions of this Court became then and there immediately effective and (2) that it was not testamentary in character for the two-fold reason (a) that the gift in favor of Blanche Cilley was expressly stated to be irrevocable even though it was not intended to take effect in possession or enjoyment until after Cilley's death, and (b) that *Henderson Estate* and §8 of the Estates Act of 1947 as amended on July 11, 1957 control.

Moreover the majority concede that the effect of Cilley's 1956 will (he died in 1958) was to exclude this adopted child from gifts to issue. Cilley's actual intent was therefore clear, namely, he did not wish adopted children to share in his inter vivos trust or in his will. However, the majority take the position that the Estates Act of 1947, even when amended in 1957, nullified and voided the settlor's actual intent under the theory that the trust Agreement of 1936 did not become effective until the settlor's death in 1958. In conveyances effective after January 1, 1948 an adopted child was presumed—by virtue of §14(3) of the Estates Act of 1947—to be included in the word "issue" unless the settlor expressly or by implication otherwise provided. The majority further assert that settlor must have intended the word "issue" to include an adopted (in 1953) child because the trust Agreement of 1936 provided:

"THIRTEENTH: It is . . . agreed that this Indenture shall be revocable at any time during his life by the Donor, except as to the provision in favor of Blanche E. Cilley in paragraph Third hereof, which shall be ir-

revocable, and that no interests of any kind shall vest in any parties under this Indenture until the date of the death of the Donor, and said Donor subject to the foregoing exception may revoke, alter or modify this Indenture, in whole or in part, at any time by any instrument in writing, executed and delivered to the Trustee."

The majority opinion states that the pivotal question is the effective date of the conveyance. Was it 1936 when the trust Agreement was made, or was it 1958 when the settlor died? Section 21 of the Estates Act provides (page 111) : "Section 21. Effective Date.— This act shall take effect on the first day of January, one thousand nine hundred forty-eight . . . shall apply only to conveyances effective on or after that day. As to conveyances effective before that day, the existing laws shall remain in full force and effect."

In the first place the majority's interpretation is refuted by the prior decisions of this Court which are hereinabove cited or quoted, and in the second place it is refuted by the fact that settlor's wife Blanche was given under the 1936 trust Agreement an *irrevocable* interest even though it did not vest or take effect until Cilley's death. Moreover the word "vest" has always had a number of meanings, depending upon its context. Cf. *Phillips's Estate (No. 1)*, 205 Pa. 504, 55 A. 210. We believe it was not used in this context in its technical sense of vesting in interest (as the majority interpret it) especially since, we repeat, Blanche's interest, while contingent, was irrevocable. However, it is immaterial whether the word "vest" was or was not herein used in its technical sense of vesting in interest, because the gifts to "lawful issue" were technically not vested interests but "mere expectancies,"—*Henderson Estate*, supra—and therefore as the settlor correctly said did not vest until his death. We believe that

in this context the settlor used the words "no interests of any kind shall vest in any parties under this Indenture," to mean that "no absolute indefeasible right shall be acquired by his children or lawful issue" until his death, and thus make certain beyond any legal doubt that he had a right to change or revoke the gifts to his children or lawful issue at any time he desired.

I would affirm the decree of the Orphans' Court which held that the adopted child was not included in the words "lawful issue" and was not entitled to any share in the property included in the 1936 trust Agreement.