## Pennington Estate

O. C. of Philadelphia County, no. 3756 of 1941.

*Ellen O. Suria, Daniel B. Michie, Jr., Robert F. Lehman,* and *Fell & Spalding,* for exceptants.

*Philip A. Bregy* and *MacCoy, Evans & Lewis,* contra.

BOLGER, J.; March 26, 1965.—The exceptions on behalf of Doris H. Pennington, guardian of the property of Deborah Ann Pennington, a minor, are directed to the dismissal by the learned auditing judge of her claim that being his adopted daughter she is "issue" of

Robert Pennington and the consequent award of the balance of the trust back to the trustees for the benefit of the settlor's surviving son, George Powell Pennington, Jr.

This is a revocable insurance trust containing spendthrift provisions as to income and principal. The other pertinent parts of it are set forth in the adjudication. Under section 8, P. L. 792 of the 1957 Amendment to the Estates Act of April 24, 1947, it is an inter vivos and not a testamentary trust.

The learned auditing judge was faced with the question of whether the construction of the word "issue" should be decided under Pennsylvania or under New Jersey law. Relying in part upon section 298, comment c, Restatement, Conflict of Laws, he held in the supplemental adjudication that Pennsylvania law governs. This is a minor flaw which could have been a major one under other circumstances.

The learned auditing judge placed reliance, inter alia, upon section 298 c, of Restatement, Conflict of Laws. We believe this to be error. The subject matter before us is one of distribution and not of administration of the trust. Therefore, section 296 "Interpretation of Trust Instruments" is more properly applicable. Comment a of this section asserts that it applies to testamentary as well as inter vivos trusts. It reads as follows: "The meaning of the words used in an instrument creating a trust of movables is, in the absence of controlling circumstances to the contrary, determined in accordance with usage at the domicile of the settlor of the trust at the time of the execution of the instrument which created it.": Restatement, Conflict of Laws §296. Here, at the time of execution of the deed, the settlor was a resident of New Jersey and executed the instrument in New Jersey. Also his wife, a cotrustee, was a resident of New Jersey and also executed the instrument there. The conclusion necessarily fol-

lows that the law of New Jersey, as to the meaning of the word "issue" if this authority be relied upon, is the applicable law in this case. Section 298, cited in the supplemental adjudication, refers to testamentary trusts only.

As to the proof of the law of foreign jurisdictions, the appropriate statute is the Act of May 4, 1939, P. L. 42. The Pennsylvania enactment of the Uniform Judicial Notice of Foreign Law Act, sec. 1, provides: "Every Court of this State shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States.

"Section 2. The court may inform itself of such laws in such manner as it may deem proper, and the court may call upon counsel to aid it in obtaining such information."

"Section 3. The determination of such laws shall be made by the court and not by the jury, and shall be reviewable."

"Section 4. Any party may also present to the trial court any admissible evidence of such laws; but to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice "shall be given to the adverse parties, either in the pleadings or otherwise."

In the event that the learned auditing judge had not taken notice of the law of the State of New Jersey, this court sitting en banc, as the appellate arm of the court, would have the right to do so: Parkway Baking Company vs. Freihofer Baking Company, 255 F. 2d 641 (1958).

Our record does not reveal that notice was given prior to the original adjudication that the law of New Jersey would be relied upon by the exceptant as to the meaning to be ascribed to "issue." However, following the adjudication, the attention of the auditing judge and of counsel for George was called by the exceptant

to this point, whereupon the auditing judge suspended confirmation and following a conference of counsel held another audit. At the reaudit, both counsel argued and submitted briefs as to the New Jersey law. In the supplemental adjudication, the auditing judge, after discussing the cases of In re Coe, 42 N. J. 485, and In re Wehrhane, 23 N. J. 205, held that under the law of New Jersey "issue" did not connote adopted children.

Counsel for the daughter relies substantially on the case of In re Coe for the proposition that In re Wehrhane has been overruled. In In re Coe, the limitation was to "lawful children." In In re Wehrhane the limitation was to "issue per stirpes." The New Jersey court in In re Coe refused to overrule its prior decision, but found that the words "lawful children" were not the same as "issue." Therefore, the law of Pennsylvania and of New Jersey is identical to the extent that under this deed of trust, an adopted child cannot be considered as "issue." We, therefore, sustain the conclusion of the learned auditing judge that exceptant, Deborah Ann Pennington, adopted daughter of Robert Pennington, is not "issue" of Robert.

For the foregoing reasons we conclude that the question of conflict of laws as to which law governs is moot. Any possible error of the auditing judge involving this point must, therefore, be regarded as harmless and in no way affecting the decision of the case.

After a careful scrutiny of the deed and the testimony of the surrounding circumstances of its execution, we can find no basis for the exceptant's argument that under an elliptical construction of the deed, settlor intended "issue" to include adopted children and, therefore, overrule it.

On behalf of the adopted daughter, counsel would now reverse their ground and return to Pennsylvania law. They assert that "conveyance" of the assets of this trust did not occur upon the execution of the deed and

the delivery of the policies of life insurance to the trustees on March 22, 1933, or upon the death of the settlor in 1938, when the trustees came into possession of the proceeds of the policy, but that under Storb Appeal, 400 Pa. 567, the conveyance under the Estates Act of April 24, 1947, did not occur until Robert's death in 1963, at which time the surviving brother, George, had only an expectancy in the remainder. Under this theory it is maintained the Estates Act of 1947 applies. This argument must be rejected because Storb Appeal is unique on its facts. Section 1, paragraph 2, of the Estates Act, supra, reads:

" 'Conveyance' means an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation." In Storb Appeal, supra, settlor executed a revocable deed in 1936, providing net income to be paid to his son, Donald, and his daughter, Ruth, until their arrival at the age of 30 years respectively, when each child was to be paid one-half of the principal and in the event that either or both of them died before the distribution of their shares "leaving lawful issue to survive either or both of them," such issue would take per stirpes the share of the parent and in default of either child dying leaving lawful issue, then to the survivor. The daughter, one of the life tenants, adopted a child in 1953 and died in 1955. The settlor died in 1958. Ruth, who was under 30 years of age at the time of her death, left an adopted child. However, the deed stated that "no interests of any kind shall vest in any parties . . . until the death of (settlor)." In its opinion, the Supreme Court of Pennsylvania in determining the date of conveyance as defined in the Estates Act, supra, affirmed its prior decisions in Howlett Estate, 366 Pa. 293, Collins Estate, 393 Pa. 195, and Holton Estate, 399 Pa. 241, that it was bound by the statutes of inheritance at the time the inheritance be-

comes effective and, in the case of a will, by the terms of the will itself and that, therefore, the Estates Act of 1947, supra, which by its terms is not retroactive, did not apply. However, the court held that the Estates Act, supra, which completed the equating of adopted persons with natural persons did not apply to the Storb deed because of the settlor's expressed intention that "no interests of any kind shall vest in any parties . . . until the death of (settlor)." Therefore, the court held that the conveyance did not occur until the settlor's death in 1958, when the Estates Act was effective and that settlor's adopted daughter was held to be "issue." However, the language of the deed in the Storb Appeal or anything akin thereto does not appear in the deed before us and we must therefore hold that the conveyance occurred when the settlor executed the deed and delivered the policies to the trustee in 1933. We cite in support of this conclusion Howlett's Estate, supra, Collins Estate, supra, and Holton Estate, supra.

In establishing this deed of trust, the settlor intended equality between his two sons, both of them then quite young. They were given equal benefactions in all respects so far as the settlor could then foresee. Subsequent events over which he had no control, but over which Robert had control, now result in what we unanimously regard as a most unfair distribution of the remaining share of the trust now before us. We are positive that the settlor never intended that George, who has already received his one-half interest intact, would, in the course of events as they have occurred, also receive the present fund to the detriment of Robert's widow and his adopted daughter. We have diligently studied the deed from its four corners and weighed the surrounding circumstances attending its execution seeking possible grounds upon which the present injustice in the distribution of this fund can be prevented. However, we can find no basis to ac-

complish this desired result. The settlor intended that the share of the first son to die without having withdrawn his share completely and without "issue," was to go to the surviving son. Robert having so died, George has survived him. This intention must now be carried out. Most regretfully we are completely satisfied that the adjudication is correct in holding that Robert did not receive an equitable fee under the deed, that he had a life estate with the power to withdraw the fund now before the court when he became 45 years of age, but which he never exercised in the remaining months of his life when he had opportunity to do so. As stated at the argument, during those months he was just a telephone call away from obtaining it. It is true that the power given to Robert was akin to but is broader than a power of consumption; it was more in the nature of a power to terminate, absolute *when exercised*. It may be conceded also that the spendthrift provisions ceased to be applicable to the shares of principal to which Robert became successively entitled to withdraw and that such funds then became amenable to the claims of creditors: Morgan's Estate, 223 Pa. 228; Sproul-Bolton v. Sproul-Bolton, 383 Pa. 85 (1955) ; Trainer Estate, 166 Pa. Superior Ct. 472. However, the main point is that the res became transmissible by Robert only when he withdrew them. He never did so. Although the exceptant has abandoned all exceptions to the ruling by the auditing judge on this point, we must add most cogently that in the record before the auditing judge appears the testimony of Ronald A. Brown, trust officer of the trustee-bank in charge of this trust, to the effect that he had at least three telephone conversations with Robert, at least one of which was after Robert had attained 45 years of age, respecting Robert's written inquiry as to whether he could add to the trust and also to a request for the withdrawal of $5,000.

The trustee replied that under the advice of counsel, no additions could be made to the trust. At the same time the trustee honored the request for withdrawal and sent Robert a check for $5,000. Mr. Brown stated that he told Robert at that time the trustee desired Robert to withdraw the entire amount because the trust had been reduced to $25,000. Robert, according to the witness, replied that he had no desire to withdraw the full amount. This testimony was not objected to, was not contradicted and was credible. We must, therefore, accept it. This results in sealing off this phase of the case.

The exceptions of the executrix of Robert's Estate to the refusal of the auditing judge to surcharge the trustee for alleged negligence in giving Robert incorrect advice were withdrawn at the argument before the court.

For these reasons all exceptions are dismissed and the adjudication and the supplemental adjudication are confirmed absolutely.